

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HATTIE MAE GREGORY,       )
                          )
            Plaintiff,    )
                          )
      vs.                 )     No.  07 C 3756
                          )
MICHAEL J. ASTRUE, Commissioner  )
of Social Security,       )
                          )
            Defendant.    )

## MEMORANDUM OPINION AND ORDER

Plaintiff Hattie Mae Gregory filed for supplemental security income and disability insurance benefits due to foot surgery and back pain. Her application was denied initially, and again upon reconsideration. Administrative Law Judge Janice M. Bruning held a hearing and determined that plaintiff was not disabled, and the appeals council denied plaintiff's request for review. Plaintiff brings this action against the Commissioner of Social Security as an appeal of the ALJ's decision, and now moves for summary judgment. The Commissioner also moves for summary judgment. For reasons stated below, plaintiff's motion is denied and the motion of the Commissioner is granted.

## BACKGROUND

Plaintiff was 53 years old at the time of her administrative hearing. She was a high school graduate, had work experience as a bookkeeper, school bus monitor, and a home care worker for the mentally disabled. She has not engaged in substantial gainful employment since February 19, 2005, her alleged onset date.

Plaintiff began seeking medical attention for swollen feet in March 2004. In July 2004,

she had surgery on the bones of the second and third toe of the right foot to correct degenerative changes. In September 2004, plaintiff began seeking treatment for lower back pain that radiated to her right lower leg. She received epidural steroid injections for pain relief. A subsequent MRI revealed mild to moderate degenerative changes in the spine. In April 2005, plaintiff underwent posterior spinal fusion and hemilaminectomy to relieve the back pain. After the surgery, plaintiff underwent a course of physical and occupational therapy for approximately one week. At discharge, she wore a back brace and took Vicodin for pain. After discharge, she continued to complain of pain from the lower back down to the lower right leg.

In May 2005, Dr. Roopa Karri examined plaintiff and reviewed the medical evidence for the state Bureau of Disability Determination Services. He reported that plaintiff was obese, wore a back brace, and had difficulty moving from standing to sitting position. Further, that she was able to get on and off the examination table; could not walk more than 50 feet without support, limped on the right leg, and needed a walker -- her left leg strength was 5/5 and her right leg strength was 3/5. She had normal range of motion in her shoulders, elbows, wrists, hips, knees, ankles and cervical spine, and the grip strength in her hands was normal. She had tenderness in the lumbar spine. A straight-leg raise test revealed pain in the right leg.

In June 2005, Dr. Dennis Keane, plaintiff's physical medicine and rehabilitation specialist, reported that plaintiff complained of poor sleep and pain in her back, but lessening leg pain. She did not report numbness or tingling. She had normal strength and sensation in her right leg. She walked independently with a normal gait, but continued to take from four to eight Vicodin tablets per day for pain relief.

In July 2005, a state reviewing medical consultant reviewed the medical evidence for

a physical residual functional capacity assessment. He concluded that plaintiff could lift 20 pounds occasionally and ten pounds frequently; sit, stand and walk for six hours each in an eight-hour workday; could never climb ladders, ropes, or scaffolds; and could occasionally perform all other postural activities. Later that month, plaintiff was seen by Dr. Thomas McNally, who noted reduced but continued pain. When encouraged, she demonstrated 5/5 muscle strength in her right leg. Dr. McNally assessed that plaintiff was improved, but not completely recovered, and could begin to wean herself from the back brace.

In August 2005, Dr. Keane noted continued but reduced pain. At this time, plaintiff also had symmetric reflexes, normal sensation, and a normal but slow gait. She also continued to complain of sleeping problems. In September 2005, Dr. McNally noted slow progression and mild improvement. She continued to complain of pain in her lower back, but was walking up to a block at a time and had normal strength and sensation in her legs. Over the next several months plaintiff continued to complain of pain, although the pain was gradually abating.

In January 2006, plaintiff reported excruciating pain in the posterior pelvis and bilateral groin. An MRI and x-rays revealed some minimal bulging in the spine. By March 2006, plaintiff reported that her pain had improved slightly but not completely. In April 2006, Dr. McNally reported that plaintiff complained of hip and groin pain, but showed no loss of strength, had a normal gait pattern, and was able to get on the examination table without difficulty. An MRI and x-rays revealed no change in her degenerative condition, and an EMG of her right leg was normal.

In July 2006, Dr. Keane noted that plaintiff suffered from chronic pain and that she was "frustrated, but in no acute distress." Her pain bothered her with prolonged sitting or

standing, she had tenderness in the right lumbar paraspinal muscles and right gluteal muscles, and a straight-leg raise at 60 degrees on the right gave shooting pain down toward the knee, but not below the knee. She had normal strength and sensation, and walked with a normal gait. In response to breakthrough pain, she took Vicodin one to three times per day.

Over the next several months, plaintiff's progress continued to improve. In August 2006, she reported to Dr. McNally that her pain lessened and she began some exercise. At the time of the visit, her pain was a 3 on a scale from 1 to 10. When the pain was at its worst, it rose to a 9. She described the underlying pain as constant, and that it was made worse by sitting or standing for 30 minutes, and was worse at night. Walking or icing helped alleviate the pain.

In October 2006, plaintiff reported to Nurse Amy Sanborn that the pain in her groin and down her leg continued. She had a few good days, but mostly rough days. She was only able to sleep about one hour at a time before being awakened by the pain. She described the pain as constant, sharp and stabbing, and that it was worse while lying down, sitting for 60-90 minutes, standing for a few hours, and walking. At the time of the appointment, the pain was a 7 on a scale of 1 to 10. It varied from 5 to 10. She had another CT scan that showed advanced degenerative changes of the lumbar spine, most prominent at L4-5 and L5-S1.

At the hearing on November 14, 2006, plaintiff testified that she regularly took pain medication, but she was not participating in physical therapy. She testified that she could lift three to five pounds, sit for one to one and a-half hours, walk up to one mile with a cane, and stand for only 30 to 60 minutes. She testified that about three to four times a week she suffered from severe pain; the pain level varied, but when very bad it caused her to "stay in bed." Plaintiff also testified that she cooked, sometimes shopped, drove occasionally on the

weekends for up to three hours, washed dishes, did laundry, dusted, took out the trash, watched television, and went to church almost every Sunday. She generally stayed for the one to two-hour service, but would have to get up to walk around during the service.

Edward F. Pagella, an impartial vocational expert, also testified at the hearing. Pagella considered jobs for a hypothetical person of plaintiff's age, education level, and past relevant work experience. The ALJ instructed Pagella to assume that the hypothetical person was able to lift 20 pounds occasionally and ten pounds frequently; able to sit, stand, and walk for six hours each in an eight-hour workday; required a sit/stand option at-will; could occasionally stoop, balance, crouch, kneel, and crawl; but could never climb ladders, ropes, or scaffolds. Pagella responded that such a person could work as a general office clerk and that there were approximately 6,200 jobs in the regional economy. Further, he testified that such a person could work as an information clerk, and there were approximately 4,800 such jobs in the regional economy. On cross-examination Pagella conceded that if such a person would miss three days a month of work due to pain-based symptoms, it would indicate that there would be no substantial gainful employment for that individual.

On January 9, 2007, the ALJ issued a determination, finding that plaintiff was not disabled. The ALJ followed the familiar five-part test for disability. *See* 20 C.F.R. §§ 404.1520, 416.920. She determined that plaintiff had not engaged in substantial gainful activity since the alleged onset date (step 1), that the degenerative changes in her spine and feet were severe impairments (step 2), and that she did not have an impairment or combination of impairments that medically equaled one of the listed impairments (step 3). The ALJ then determined that plaintiff had the residual functional capacity ("RFC") to lift/carry 10 pounds frequently and 20 pounds occasionally, to sit six hours out of an eight-hour workday and

stand/walk six hours out of an eight-hour workday, that she required a sit/stand option at-will, and that she used a cane to walk. Further, plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but could never climb a ladder, ropes, or scaffolds. The ALJ, using this RFC, determined that plaintiff could not perform any past relevant work (step 4). Finally, based on the regulations, the ALJ determined that a person of plaintiff's age, education, work experience and residual functional capacity was not disabled (step 5).

Thereafter, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. 20 C.F.R. § 404.981; Herron v. Shalala, 19 F.3d 329, 332 (7th Cir. 1994). Pursuant to plaintiff's rights under the Social Security Act (42 U.S.C. § 405), she filed this action seeking judicial review of the Commissioner's determination.

## STANDARD OF REVIEW

We deferentially review the ALJ's factual determinations and will affirm a decision if it is supported by substantial evidence. 42 U.S.C. § 405(g); Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Skinner v. Astrue, 478 F.3d 836, 841 (7th Cir. 2007). We review the record as a whole, but we may not re-weigh the evidence or substitute our own judgment for that of the ALJ. Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005).

## DISCUSSION

Plaintiff's arguments on appeal are not entirely clear despite the fact that she is represented by counsel, as she has been throughout her proceedings. Her 10-page submission to this court consists mostly of a recitation of the procedural history and general statements

regarding social security law. The argument section is a little over one page in length and the argument itself is mostly absent. She asserts that the ALJ's determination of her RFC is not supported by substantial evidence because the ALJ's decision fails to mention two things: (1) the results of her CT scan on October 25, 2006, and (2) her diagnosis of chronic biomechanical myofacial neuropathic pain on July 31, 2006. She then summarily concludes that under the regulations these medical records demonstrate that she has a sedentary limitation and that such limitation renders someone of her age and experience disabled.

We begin our analysis by noting that one of plaintiff's assertions is factually incorrect. The ALJ specifically referenced the October 25, 2006, CT myelogram, and noted that it demonstrated "advanced degenerative changes of the lumbar spine most prominent at L4-5 and L5-S1." *See* A.R. at 13-14. Plaintiff offers no reason to believe that the ALJ disregarded this report after she acknowledged it in the opinion. Indeed, this conclusion is even more illogical when one compares the report to the results of a February 17, 2005, CT scan which shows nearly the same results (*see* A.R. at 116 "Advanced degenerative changes of the L5-S1 facet joints bilaterally. Similar facet arthropathy involves L3-L4 and L4-L5, to a lesser degree.").

Plaintiff is correct that there is no mention of the July 31, 2006, diagnosis in the ALJ's written opinion. But the ALJ need not "provide a complete written evaluation of every piece of testimony and evidence." *See* <u>Haynes v. Barnhart</u>, 416 F.3d 621, 626 (7th Cir. 2005) (internal quotations omitted). The ALJ is only required to provide a logical bridge from the evidence to her conclusion. *Id.* Plaintiff offers no reason to believe that the ALJ failed to consider this specific part of the record, other than its purported absence from the opinion. The more likely scenario is that the ALJ omitted mention of the report because it was

uneventful. Dr. Keane's report from that visit notes that plaintiff was "frustrated, but in no acute painful distress," and that "she had done fairly well" with her previous surgical intervention.

Moreover, we have independently reviewed the entire record and our examination reveals that there was substantial evidence to support the ALJ's findings regarding plaintiff's RFC. "The RFC is an assessment of what work-related activities the plaintiff can perform despite her limitations." Young v. Barnhart, 362 F.3d 995, 1000 (7th Cir. 2004). In making an RFC determination, the ALJ must take into consideration all relevant evidence, both medical and non-medical. 20 C.F.R. §§ 404.1545(a)(3) and 416.945(a)(3).

In this case, the ALJ found that the plaintiff's medically-determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. Aside from one instance of excruciating pain in January 2006, the treatments notes from plaintiff's physicians during the 18 months after the surgery note slow but steady improvement in pain, and full strength and sensation in the lower extremities. As recently as three months prior to the hearing, plaintiff reported that she was exercising and that her pain had improved. Plaintiff reported worsening of her pain in October 2006, just prior to the hearing, but this is not entirely consistent with the improvements she had made prior to that point.

The record also contains the findings of the state agency medical consultants. *See* 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2) (ALJs are allowed to consider the opinions of state agency physicians who are highly qualified physicians and are also experts in Social Security disability law). The report was prepared in July 2005. Except for the previously noted episode

in January 2006, and the time immediately before her hearing, plaintiff showed steady progress, so it was not unreasonable for the ALJ to rely on the July 2005 report with some modifications. Moreover, the record does not indicate that any other doctor suggested that greater limitation was required in plaintiff's RFC. Although we may have arrived at a different conclusion based on the evidence in this record, we find that the ALJ's determination of plaintiff's RFC is supported by substantial evidence.

## CONCLUSION

Upon examination of the record, we find that the ALJ's determination that plaintiff was able to perform a range of light work, that allowed for a sit/stand option, required only occasional performance of postural activities, required no climbing, ropes, or scaffolds, and allowed for her use of a cane for walking, is supported by substantial record evidence. Accordingly, we grant the Commissioner's motion for summary judgment and deny plaintiff's motion for summary judgment.

JAMES B. MORAN
Senior Judge, U. S. District Court

March 25, 2008.